IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT A. ZANDER,            )
                             )
          Plaintiff,         )
                             )      1:12CV700
     v.                      )
                             )
UNITED STATES OF AMERICA,    )
                             )
          Defendant.         )
                             )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Defendant United States of America ("Defendant") has submitted a Motion to Dismiss, Judgment on the Pleadings or, in the Alternative Motion for Summary Judgment. (Doc. 46.) Plaintiff Robert A. Zander ("Plaintiff") has responded, (Doc. 63), and Defendant has replied. (Doc. 68.) Plaintiff has also filed an Amended Motion for Summary Judgment. (Doc. 59.) In lieu of responding to that motion, Defendant has filed a Motion for Extension of Time to Respond to Plaintiff's Amended Motion for Summary Judgment and Motion to Stay the case until this court has ruled on Defendant's currently pending dispositive motion. (Doc. 66.) Plaintiff has responded, (Doc. 69), and Defendant has replied. (Doc. 70.) This matter is now ripe for resolution and for the reasons stated herein, Defendant's motion for summary

judgment will be granted and Defendant's motion for an extension of time and to stay the case and Plaintiff's motion for summary judgment will be denied as moot.[1]

I.  **FACTUAL BACKGROUND**

Plaintiff is a former Federal Bureau of Prisons ("BOP") inmate who was incarcerated at Federal Prison Camp Butner ("Butner"). (Complaint ("Compl.") (Doc. 2) ¶ 16.) Plaintiff alleges that on or about September 4, 2007, he authored a letter that protested the disparity in criminal sentencing between crack cocaine and powder cocaine. (Id.) Plaintiff mailed nineteen copies of this letter to members of the U.S. Congress, the national broadcast and print media. (Id.) Plaintiff alleges that, despite this letter being designated as "special mail" under 28 C.F.R. §§ 540.18 and 540.20, that it was opened and read by BOP employees. (Id. ¶¶ 20-21.) As a result of BOP officials reading his mail, he was "aggressively interrogated" about the contents of the letter and was issued a written incident report that charged him with an unsubstantiated infraction of the BOP rules and regulations. (Id. ¶¶ 23-26.) As a result of this charge, Plaintiff was confined to segregated

---

[1] The parties have submitted a number of motions concerning a video of the March 17, 2008 incident. (See Docs. 72, 78, 82.) In light of this opinion, those motions will be dismissed as moot.

housing, which he refers to as "the Hole," for more than six months, where he alleges that he was routinely threatened and intimidated by prison guards despite his multiple health problems. (Id. ¶¶ 27-29.) When Plaintiff was brought before a Disciplinary Hearing Officer, he was cleared of any wrongdoing. (Id. ¶ 30.) Plaintiff alleges that despite being cleared of any wrongdoing, and in order to punish him further, Plaintiff was then transferred from Butner to FCI Oakdale ("Oakdale") in Louisiana, despite the fact that he was designated a Care Level 3 inmate, a status that he alleges should have prevented his transfer.[2] (Id. ¶¶ 31-34.) In order to effectuate this transfer, Plaintiff alleges that Defendant employed a "force team" that "violently struck" Plaintiff, and "sadistically subjected [Plaintiff] to excruciating pain." (Id. ¶ 36.)

## II.  PROCEDURAL HISTORY

On May 5, 2008, Plaintiff filed a Federal Tort Claims Act ("FTCA") claim with the BOP, wherein he alleged he was the victim of theft of property, lost wages, and an assault and battery by prison officials that occurred on or about September 6, 2007. (See Def.'s Reply to Pl.'s Resp., Second

---

[2] According to Plaintiff, Care Level 3 inmates are inmates with fragile health who require frequent medical attention, and his designation as Care Level 3 is the reason he was placed at Butner, rather than some other facility. (Compl. (Doc. 2) ¶ 32.)

Declaration of Cornelia J. Coll ("Coll Second Decl."),

Attach. 1, May 2008 FTCA Administrative Claim ("May 2008 FTCA

Claim") (Doc. 11-1) at 6.)  On June 21, 2011, Plaintiff filed a

second FTCA claim, wherein he alleged various misconduct,

including assault and battery, by prison officials on

September 6, 2007 continuing until the present. (See Def.'s Mem.

in Supp. of Mot. to Dismiss, First Declaration of Cornelia J.

Coll, Attach. 3, June 2011 FTCA Administrative Claim ("June 2011

FTCA Claim") (Doc. 8-1) at 15-16.)[3]  Plaintiff filed the instant

action on July 11, 2012, seeking damages against the United

States for various alleged acts of misconduct committed by BOP

employees. (See Compl. (Doc. 2).)

Defendant filed a motion to dismiss on September 12, 2012

(Doc. 7), and on September 10, 2014, the Magistrate Judge issued

a Memorandum Opinion, Order, and Recommendation finding that

Plaintiff's June 2011 FTCA claim had not been timely filed and

exhausted, and recommending that Defendant's motion to dismiss

be granted based on a lack of subject matter jurisdiction as to

---

[3] This court notes that Plaintiff's May 2008 FTCA claim is
not attached as an exhibit to Defendant's original motion to
dismiss despite having been filed earlier in time than
Plaintiff's June 2011 FTCA claim.  This discrepancy is explained
in the Second Declaration of Cornelia Coll, which notes that
Plaintiff's first FTCA claim was not discovered until briefing
had commenced, when Plaintiff alleged that he had filed two
claims. (See Coll Second Decl. (Doc. 11-1) ¶¶ 3-5.)

-4-

every cause of action except for Plaintiff's causes of action for assault and battery. (See Mem. Op., Order & Recommendation ("Recommendation") (Doc. 15).) As to the assault and battery allegations, the Magistrate Judge found that because Plaintiff had filed a timely FTCA claim in May of 2008 that included claims for assault and battery allegedly occurring on September 6, 2007, the District Court had subject matter jurisdiction to consider Plaintiff's assault and battery claims that occurred "on or about September 6, 2007." (Id at 7.)[4] On October 9, 2014, the District Court adopted the Magistrate Judge's Recommendation and granted Defendant's motion to dismiss as to fourteen of Plaintiff's sixteen claims. (See Order (Doc. 19).)

After discovery, on September 8, 2015, Defendant filed the instant Motion to Dismiss, Judgment on the Pleadings or, in the Alternative Motion for Summary Judgment (Doc. 46) and supporting brief (Doc. 47). On October 7, 2015, while that motion was being briefed, but before briefing was complete, Plaintiff filed an Amended Motion for Summary Judgment. (Doc. 59.) On November 10,

---

[4] Regarding the June 2011 FTCA claim, the Magistrate Judge held that the court lacked subject matter jurisdiction over the claims contained in that filing because the claims had not been filed within two years of the events giving rise to them, as required by 28 U.S.C. § 2401(b). (Recommendation (Doc. 15) at 8-9.)

2015, Defendant filed a Motion for Extension of Time to Respond to Plaintiff's Amended Motion for Summary Judgment and Motion to Stay the proceedings until Defendant's current dispositive motion was decided. (Doc. 66.)

III. **LEGAL STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to

relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." <u>Twombly</u>, 500 U.S. at 555, 570; <u>see</u> <u>Iqbal</u>, 556 U.S. at 680. Under <u>Iqbal</u>, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). <u>Iqbal</u>, 556 U.S. at 681. Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." <u>Id.</u> "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor." <u>Estate of Williams-Moore</u>, 335 F. Supp. 2d at 646.

The same standard is applied for motions under Federal Rule of Civil Procedure 12(c) as for motions pursuant to Rule 12(b)(6). <u>Indep. News, Inc. v. City of Charlotte</u>, 568 F.3d 148, 154 (4th Cir. 2009) (<u>citing</u> <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)).

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material

fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.

If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial. However, this requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts," the "nonmoving party must come forward with 'specific facts showing that there is a <u>genuine issue for trial</u>.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986) (citations and footnote omitted) (quoting Fed. R. Civ. P. 56(e)). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine dispute as to a material issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

Nonetheless, the court must ensure that the facts it considers can be "presented in a form that would be admissible in evidence" and that any affidavits or evidence used to support or oppose a motion are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the

-8-

affiant or declarant is competent to testify on the matters stated." See Fed. R. Civ. P. 56(c)(2), (4).

The court must view the facts in the light most favorable to the nonmoving party, drawing inferences favorable to that party if such inferences are reasonable. Anderson, 77 U.S. at 255. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

As a sovereign, the United States and its agencies are immune from suit, absent a waiver of that immunity. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The plaintiff bears the burden of demonstrating a waiver of that immunity, and if the plaintiff fails to meet that burden, then the court lacks subject matter jurisdiction, and the suit must be dismissed. See Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). The FTCA, as a waiver of sovereign immunity, is strictly construed, and all

-9-

ambiguities are resolved in favor of the sovereign. <u>Robb v.</u>
<u>United States</u>, 80 F.3d 884, 887 (4th Cir. 1996).

**IV.  <u>ANALYSIS</u>**

As an initial matter, there is an issue concerning the
scope of Plaintiff's single timely FTCA claim, and the extent to
which this court has subject matter jurisdiction over
Plaintiff's remaining causes of action for assault and battery.

As noted above, Plaintiff bears the burden of establishing
that his asserted claims fall within a waiver of sovereign
immunity.  <u>Welch</u>, 409 F.3d at 651. Here, Plaintiff's claims may
only be brought, if at all, pursuant to the FTCA, which waives
the sovereign immunity of the United States for certain acts
committed by federal employees. <u>Medina v. United States</u>, 259
F.3d 220, 223 (4th Cir. 2001).  Because the FTCA constitutes an
exception to the general rule of sovereign immunity, "the
circumstances of its waiver must be scrupulously observed and
not expanded by the courts" and plaintiffs "must file an FTCA
action in careful compliance with its terms." <u>Kokotis v. U.S.</u>
<u>Postal Serv.</u>, 223 F.3d 275, 278 (4th Cir. 2000).

Before a plaintiff may bring an FTCA action in federal
court, he must first administratively present his tort claim to
the appropriate agency for determination and have that claim
finally denied by the agency in writing. <u>See</u> 28 U.S.C.

-10-

§ 2675(a).[5] The claim must be properly presented in writing to the appropriate agency within two years after the claim accrues. 28 U.S.C. 2401(b). "A claim is 'presented' . . . if it gives the government adequate notice to properly investigate the underlying incident and places a 'sum certain' on the claim's value." White v. United States, 907 F. Supp. 2d 703, 705 (D.S.C. 2012) (citing Ahmed v. United States, 30 F.3d 514, 516-17 (4th Cir. 1994)). "The plaintiff does not have to identify legal theories in the written notice or provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery." Rudisill v. United States, No. 5:13-CV-110-F, 2014 WL 4352114, at *1 (E.D.N.C. Sept. 2, 2014) (internal citations and quotations omitted). However, the claim must "do more than cause the government to sift through the record . . . [and the] notice must be sufficiently detailed so that the United States can evaluate its exposure as far as liability is concerned." Id. (internal citations and quotations omitted).

---

[5] Here, because the BOP did not act on Plaintiff's FTCA claims within 6 months, they are deemed denied for purposes of the FTCA. See 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").

## A.    Plaintiff's May 2008 FTCA Claim

In the instant case, fourteen of Plaintiff's original sixteen causes of action were dismissed on the basis that they had not been presented to the appropriate agency within the required two-year window. (See Recommendation (Doc. 15) at 8-9.) However, the Magistrate Judge found that because Plaintiff's May 2008 FTCA claim was timely and alleged claims for assault and battery, that his corresponding claims for assault and battery found in the Complaint could proceed to the extent that they aligned with those in the May 2008 FTCA claim.  (Id. at 7.) However, the Magistrate Judge did not rule on the scope of the May 2008 FTCA claim and what could properly be asserted in this case, and in its discovery order, explained that issues such as the scope of the claim and whether the March 17, 2008 use of force incident fell within that scope remained pending for resolution on further dispositive motions. (See Id. at 7 n.3 ("[A]ny further issues regarding the precise dates of the alleged assaults and the scope of the FTCA claim can be developed during discovery, and addressed further on subsequent dispositive motions as appropriate."); see also Order (Doc. 23) at 3-4 (noting that an issue remained as to the scope of the claims that could properly be asserted in this case, "specifically with respect to exactly what claims were included

in Plaintiff's May 2008 Federal Tort Claims Act administrative claim.") Discovery has concluded, and this court must now determine the scope of the May 2008 FTCA claim before it can determine the extent to which Plaintiff's surviving claims fall within that scope.

Here, Plaintiff's May 2008 FTCA Claim recites that his injury occurred "on or about September 6, 2007" and describes the basis of his assault and battery claim in its entirety as follows: "Angina and blood pressure maladies seriously aggravated by assault and battery of prison officials. Further, unlawful misconduct constitutes attempted murder." (See Coll. Second Decl., Attach. 1, May 2008 FTCA Claim (Doc. 11-1) at 6.)[6] The other relevant facts alleged are "[u]nlawful and incompetent misconduct of prison officials" that caused his medical condition to be "exasercbated [sic] resulting in damages of unknown financial magnitude." (Id.) September 6, 2007 was the date, according to Plaintiff's Complaint, when he met with several prison officials and was assigned to the segregated housing unit. (See Compl. (Doc. 2) ¶¶ 23-27.)

As noted above, Plaintiff's causes of action for assault and battery will only fall within the scope of the May 2008 FTCA

---

[6] Plaintiff's May 2008 FTCA claim also contained claims for theft of property and loss of wages, but those claims are not reflected in his complaint and thus are not before the court.

-13-

Claim if that claim gave the United States notice sufficient to investigate those claims and evaluate its liability exposure. Rudisill, 2014 WL 4352114 at *1. "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a) . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." Roma v. United States, 344 F.3d 353, 362 (3d Cir. 2003) (internal quotations and citations omitted).

This court first finds that the May 2008 FTCA Claim does not give notice of the events of March 17, 2008, sufficient to allow the United States to properly investigate those events, and as such, they are not properly within the scope of that claim. See Ahmed, 30 F.3d at 516-17. This is not a situation where Plaintiff has simply alleged new theories of liability in a complaint that arise out of the same facts or events contained in his FTCA claim. Rather, as regards March 17, 2008, Plaintiff has alleged in his complaint an entirely distinct set of facts and theories. The force team incident of March 17, 2008 occurred more than six months after the date alleged in his FTCA claim, involved different actors, and different precipitating circumstances. Plaintiff's May 2008 FTCA Claim, which states only that Plaintiff was assaulted and battered on September 6,

2007, with no further elaboration, simply does not contain enough information for Defendant to investigate events occurring six months later.

Similarly, to the extent he alleges assaults and batteries by BOP employees while he was in segregated housing, Plaintiff's May 2008 FTCA Claim does not put Defendant on notice of, or allow it to, properly investigate and evaluate events that are alleged to have occurred on unnamed dates, involving unnamed actors, over the course of the six-plus months that Plaintiff was in segregated housing. As such, this court finds that the scope of Plaintiff's FTCA claim should be limited to events that are alleged to have occurred on September 6, 2007, when Plaintiff was disciplined for his letter and assigned to segregated housing, and summary judgment is granted in favor of Defendant on this issue to the extent that Plaintiff seeks recovery on claims occurring outside the September 6, 2007 incident.

### 1. This Court has No Subject Matter Jurisdiction Over the Battery Claim

Defendant contends that Plaintiff's current cause of action for battery does not relate to the battery alleged in his timely FTCA claim that took place on or about September 6, 2007. When asked about his battery claim at deposition, Plaintiff stated

that it occurred on "March 17th or 18th", and discussed the force

team incident exclusively. (Def.'s Mem. in Supp. of Motion to

Dismiss ("Def.'s Mem."), Ex. 2, Deposition of Robert A. Zander

("Zander Dep.") (Doc. 47-2) at 38:23-39:16.)[7] Later in his

deposition, Plaintiff was specifically asked about the events of

September 6, 2007 and stated that "[t]here was no battery at

that time." (Id. at 98:13-20.) Plaintiff has put forth no

evidence to the contrary, asserting in his response only that

the assault claimed in his complaint "commenced on September 6,

2007 and did not end until Plaintiff was returned to North

Carolina on September 1, 2010." (See Pl.'s Resp. to Def.'s

Motion to Dismiss (Doc. 63) at 5.) As such, the allegations in

the complaint, arguments by Plaintiff, and Plaintiff's

admissions during his deposition all lead this court to conclude

that there is no issue of material fact as to a battery

occurring on September 6, 2007.

Summary judgment will thus be granted in favor of Defendant

on the issue of whether Plaintiff's claim for battery falls

within the scope of his May 2008 FTCA Claim. In finding that it

---

[7] Citations to Plaintiff's Deposition in this Memorandum Opinion and Order pinion refer to the page and line numbers from the deposition document itself. All other citations to page numbers throughout this Memorandum Opinion refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

was not, it is subject to the dismissal order entered on October 9, 2014. (See Order (Doc. 19 at 2 ("Only those claims asserted in Plaintiff's May 2008 FTCA Claim survive Defendant's Motion to Dismiss.  All other claims are time barred . . . .").)

### 2. This Court has Subject Matter Jurisdiction Over Only the Assault Alleged on September 6, 2007

Defendant similarly contends that the substance of the assault(s) alleged in Plaintiff's complaint differs from that of the May 2008 FTCA claim to the extent that Plaintiff's cause of action is not within the scope of his FTCA claim.

Plaintiff's complaint details a range of assaults allegedly occurring from September 6, 2007, through at least March 17, 2008. (See Compl. (Doc. 2) ¶¶ 9-39.) At deposition, Plaintiff initially stated that his cause of action for assault involved threats made by guards while he was in the segregated housing unit, such as, "You better learn to – you better get eyes behind your head. You better learn to sleep with your eyes open," and that the guards told him that they intended to "ensure that [his] safety was compromised." (See Zander Dep. (Doc. 47-2) at

-17-

31:4-13.)[8] Plaintiff stated that those were "pretty much the extent of the threats." (Id. at 31:14-15.)

For the reasons set out above, Plaintiff's May 2008 FTCA Claim simply does not provide sufficient notice to the United States to enable it to properly investigate events that, even if they are true, occurred over a six-month stretch of time, occurred after the date alleged in the May 2008 FTCA Claim, and are specifically detailed nowhere within that claim. There is simply nothing in the May 2008 FTCA Claim that would provide notice to the United States that it needed to investigate alleged threats made to Plaintiff by unnamed guards months after the date alleged in the claim.

However, later in his deposition, Plaintiff stated that a BOP employee named Kenneth Mottern assaulted him on September 6, 2007, when he was called into another BOP employee's office to discuss his letter. (Id. at 96:4-98:5.) This assault is also alleged in the Complaint, which states at paragraph 23 that "[o]n or about September 6, 2007, Defendant's employees aggressively interrogated [Plaintiff] about his correspondence

---

[8] Plaintiff also stated at deposition that he was threatened on March 17, 2008, the day of the use of force incident, and that the temperature in the segregated housing unit also constituted an "imminent threat of harm" to him, which he alleges was an assault. (See Zander Dep. (Doc. 47-2) at 32:4-33:4.)

. . . and <u>repeatedly threatened</u> [Plaintiff]." (Compl. (Doc 2.) ¶ 23 (emphasis added).)

Plaintiff's complaint alleges an assault on September 6, 2007, and the FTCA claim for that assault was properly presented. All other allegations of assault are subject to dismissal pursuant to the October 9, 2014 Order.

### 3. **The Discretionary Function Exception**

Plaintiff's sole allegation in his complaint concerning an assault on September 6, 2007, is that BOP employees "aggressively interrogated" him, "knowingly and falsely accused [Plaintiff] of violating prison rules and regulations" and "repeatedly threatened [Plaintiff]." (Compl. (Doc. 2) ¶ 23.) At deposition, Plaintiff described the alleged threats on September 6, 2007, as a "verbal rant" that took place in Betty Haygood's office. (Zander Dep. (Doc. 47-2) at 97:8-13.) Plaintiff claims that Kenneth Mottern had a copy of Plaintiff's letter, "rant[ed]" at Plaintiff about the letter, and repeatedly screamed that Plaintiff was "going to the hole." (<u>Id.</u> at 97:17-24.)

Defendant claims that the court does not have subject matter jurisdiction over this claim because it is subject to the discretionary function exception to the FTCA found in 28 U.S.C. § 2680(a). To the extent Plaintiff claims that the decision to

-19-

assign him to segregated housing itself was an assault, Defendant is correct.

It is Plaintiff's burden to prove subject matter jurisdiction, and thus that the discretionary function exception does not apply. Welch, 409 F.3d at 651. The discretionary function exception shields legislative and administrative decisions based on social and economic policy from the whims of judicial hindsight. The Supreme Court has established a two-pronged test to determine whether the discretionary function exception applies. First, a court must ascertain whether the governmental action complained of "involves an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536 (1988). That is, the court must look to whether the governmental conduct is "the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." Baum v. United States, 986 F.2d 716, 720 (4th Cir. 1993). If such mandatory directive is present, the plaintiff's task is to show that the governmental actor failed to adhere to the mandatory standard.

If there is no mandatory standard, the court must determine whether the challenged action is one "based on considerations of public policy." Berkovitz, 486 U.S. at 537; United States v. Gaubert, 499 U.S. 315, 323 (1991). There is a presumption that

"[w]hen established governmental policy . . . allows a Government agent to exercise discretion . . . the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. This inquiry is an objective one, requiring that the court ask "whether that decision is one which we would expect inherently to be grounded in considerations of policy." Baum, 986 F.2d at 721.

As to the first prong, Plaintiff has identified no mandatory policy or directive concerning a decision to place an inmate in segregated housing, and this court finds none.[9] Other courts have routinely held that decisions regarding inmate placement and classification fall within the discretionary function exception to the FTCA. See Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003); Little v. United States, Civil Action No. 5:11CV41, 2014 WL 4102377, at *6 (N.D. W. Va. Aug. 18, 2014); Hernandez v. United States, Civil No. 1:12-CV-647, 2013 WL 5508010, at *9 (M.D. Penn. June 18, 2013) ("BOP's actions in transferring, classifying, and placing

---

[9] This court notes that Plaintiff's allegations concerning the BOP policy regarding "privileged mail," even if true, are unavailing, as the BOP's actions, even if they were in violation of policy, were not an assault or battery, and thus not within Plaintiff's May 2008 FTCA Claim.

prisoners . . . are acts that come within the discretionary function exception.").

Even assuming that challenged conduct involves an element of judgment, however, it still must be determined whether that judgment is of the kind that the discretionary function was designed to shield. Because the purpose of the exception is to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy," the exception protects only actions and decisions that are "based on considerations of public policy." See Gaubert, 499 U.S. at 323 (internal quotations omitted). Plaintiff offers no argument as to this issue, and other courts have explained that decisions regarding prisoner classification and placement are grounded in public policy. See, e.g., Usry v. United States, Civil Action No. 5:11CV141, 2013 WL 1196650, at *7 (N.D. W. Va. Mar. 25, 2013), aff'd, 545 F. App'x 265 (4th Cir. 2013).

As such, to the extent Plaintiff claims that his placement in segregated housing as a result of the letter that he wrote was an assault, that decision falls within the discretionary function exception, and summary judgment will be granted in Defendant's favor as to that claim.

###     4.    **The September 6, 2007 Meeting**

There remains only the issue of whether some other assault occurred at the meeting on September 6, 2007.  As stated above, Plaintiff's allegations regarding an assault on that date are that "on or about September 6, 2007, Defendant's employees aggressively interrogated [Plaintiff] about his correspondence . . . and <u>repeatedly</u> <u>threatened</u> [Plaintiff]." (Compl. (Doc 2.) ¶ 23 (emphasis added).)  Plaintiff claims he was assaulted, and described the meeting in his deposition as a "rant" by BOP employee Kenneth Mottern, where he was threatened with being sent to segregated housing for his involvement in writing the letter. (Zander Dep. (Doc. 47-2) at 96:4-98:5.)  Other than the description of this meeting at deposition, there is no evidence of an assault put forth by Plaintiff.

This court recognizes that it must view the evidence in a light most favorable to the nonmoving party. <u>Pachaly v. City of Lynchburg</u>, 897 F.2d 723, 725 (4th Cir. 1990). However, when opposing a properly supported motion for summary judgment, Plaintiff cannot simply rest on conclusory statements, but must provide specific facts, particularly when, as here, he has the burden of proof on an issue.  <u>Id.</u>  "The summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of

-23-

admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479, 486 (4th Cir. 1989).

Under North Carolina law, the elements of assault are intent, offer of injury, reasonable apprehension of harm, apparent ability to cause harm, and imminent threat of injury. See Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991). The gravamen of assault is the apprehension of the alleged harmful contact. Wilson v. Bellamy, 105 N.C. App. 446, 465, 414 S.E.2d 347, 357 (1992)). Here, Plaintiff fails to put forth any evidence that he was put into apprehension of harmful contact during the meeting with BOP officials, or that if he was, such apprehension was reasonable. There is no evidence that Kenneth Mottern made any sort of display of force, or even that he threatened to do so. Rather, the evidence, taken in Plaintiff's favor, shows merely that Mottern went on a "rant" and threatened Plaintiff with assignment to segregated housing. (Zander Dep. (Doc. 47-2) at 96:4-98:5.) In North Carolina, a mere threat, unaccompanied by any attempt to show violence, is not an assault. Dickens v. Puryear, 302 N.C. 437, 445, 276

-24-

S.E.2d 325, 331 (1981). Even when taking all reasonable inferences in Plaintiff's favor, he has simply not provided sufficient proof such that a jury could render a verdict in his favor. Sibley, 871 F.2d at 486.

As such, Defendant's motion for summary judgment will be granted as to the remainder of Plaintiff's claim for assault over which this court has jurisdiction.[10]

## V.   CONCLUSION

For the reasons discussed above, this court finds that, after construing the scope of the May 2008 FTCA Claim, any allegations of assaults or batteries occurring on a date other than September 6, 2007, are outside the scope of that claim, and thus subject to this court's prior dismissal order. Summary judgment will be granted in Defendant's favor as to the allegations that remain.

**IT IS THEREFORE ORDERED** that Defendant's a Motion to Dismiss, Judgment on the Pleadings or, in the Alternative Motion for Summary Judgment (Doc. 46) is **GRANTED** and that this case is **DISMISSED.**

---

[10] This court recognizes that the heart of Plaintiff's accusations center around his time in segregated housing and the use of force incident on March 17, 2008. However, waivers of sovereign immunity must be strictly construed, and this court is simply not empowered to broaden the waiver found in the FTCA.

-25-

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Summary Judgment (Doc. 59), Defendant's Motion for Extension of Time to Respond to Plaintiff's Amended Motion for Summary Judgment and Motion to Stay (Doc. 66), Plaintiff's Emergency Motion to Produce (Doc. 72), Plaintiff's Motion to Strike Defendant's Pleadings and for Entry of Default Judgment (Doc. 78), and Defendant's Motion to Seal (Doc. 82) are **DENIED AS MOOT**.

In light of the Order dated October 9, 2014, and this Memorandum Opinion and Order, it appears all of Plaintiff's claims have been resolved and final judgment will be entered.

This the 31st day of March, 2016.

_____
United States District Judge